**IN THE UNITED STATES DISTRICT COURT**

                         **FOR THE DISTRICT OF KANSAS**

BARRY B. ADAMSON, et al.,

        Plaintiffs,
   vs.                                **Case No. 03-4191-RDR**

MULTI COMMUNITY DIVERSIFIED
SERVICES, INC., et al.,

        Defendants.

---

                              **MEMORANDUM AND ORDER**

This is an employment discrimination action. Plaintiffs, who are husband(Barry), wife(Patricia) and daughter(Jessica), bring claims against their former employer. Plaintiffs assert both federal and state law claims. Barry brings federal claims of age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., as well as state law claims of breach of implied contract, defamation and violation of the Kansas wage payment act. Patricia asserts a Title VII sex discrimination claim as well as state law claims of breach of implied contract and defamation. Jessica alleges a Title VII sex discrimination claim and a state law claim of breach of implied contract. The defendants, Multi Community Diversified Services, Inc. (MCDS) and Cartridge King of Kansas, Inc.(CKK), seek summary judgment

on all of the claims asserted by the plaintiffs.

MCDS is a nonprofit corporation that was created in 1973. Its mission is to assist disabled persons in McPherson, Kansas. MCDS expanded its operations by beginning a Cartridge King franchise. Prior to July 1, 2002 MCDS operated the Cartridge King franchise as a division of MCDS. On July 1, 2002 Cartridge King of Kansas, Inc.(CKK) was incorporated and began operations that were previously handled by the Cartridge King division of MCDS.

Barry was hired by MCDS as its CEO in August 1993. He was notified that he was being terminated on October 18, 2002. He was 54 years old at the time. Barry was told by the Board of Directors that they wanted MCDS to go in a different direction. The defendants now contend he was fired because of his management style. They assert they had been advised that the senior staff were threatening to quit if some action was not taken. The Board of Directors placed Sherry Plenert, the Chief Financial Officer, into the position of acting CEO. She was 63 years old and had been with MCDS for approximately 24 years.

Patricia began working for MCDS as business manager at the end of June 2001. Plenert was her supervisor before July 1, 2002. When CKK was incorporated, Patricia became business manager for it. She was then directly supervised by her

husband.  She was terminated on October 18, 2002, and no reasons were given for her termination.  The defendants contend now that she was terminated for (1) poor job performance, and (2) violation of the anti-nepotism policy.

Jessica was hired on July 1, 2002 after CKK became a separate company.  She had previously worked for MCDS during the summers while she was in school.  Jessica was terminated on October 18, 2002, and no reason was given for her termination.  The defendants now assert she was terminated because her position was not needed.  They contend that her position was abolished after she was terminated.

**AGE DISCRIMINATION**

The ADEA prohibits an employer from engaging in employment practices that "discriminate against any individual because of such individual's age."  29 U.S.C. § 623(b).  A claim of age discrimination under the ADEA can be proven by either direct or circumstantial evidence.  Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000).  "A plaintiff proves discrimination through direct evidence by establishing proof of an existing policy which itself constitutes discrimination."  Id. (citation and quotation marks omitted).  In all other cases, the plaintiff seeks to prove discrimination through circumstantial evidence.  See, e.g., Danville v. Regional Lab Corp., 292 F.3d 1246, 1249

(10th Cir. 2002).

Such a claim can survive summary judgment only where the plaintiff has presented sufficient evidence to show there is a genuine issue of material fact pertaining to whether the plaintiff's age actually motivated the allegedly discriminatory conduct. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000); Fed.R.Civ.P. 56(c). In determining whether the circumstantial evidence presented by the plaintiff in a given case is sufficient to establish a genuine issue of material fact, the Supreme Court has directed the application of the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

The McDonnell Douglas framework comprises three burden shifting steps. Initially, the burden rests with the plaintiff to establish a prima facie case of discrimination. Id. at 802. If the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action. Id. Finally, if the defendant articulates a nondiscriminatory reason, then the burden shifts to the plaintiff to show that the proffered reason is merely a pretext for discrimination. Id. at 804. Where the parties have satisfied their respective burdens under the McDonnell Douglas framework, summary judgment is

4

ordinarily inappropriate. Reeves, 530 U.S. at 148.

Here, Barry has suggested that he was discriminated because of his age based solely upon his allegation that a few months prior to his termination, he went to some of the board members and discussed his possible retirement. Barry has failed to explain how this discussion coupled with the timing of his termination constitutes age discrimination.

The evidence offered by Barry is circumstantial and does not prove "an existing policy which itself constitutes discrimination." Stone, 210 F.3d at 1136. Accordingly, the question whether summary judgment is appropriate must be answered using the three-step burden shifting framework of McDonnell Douglas. Danville, 292 F.3d at 1249.

In order to prove a prima facie case of age discrimination, plaintiff must show (1) that he is a member of the protected group, i.e., at least 40 years of age, (2) that he was performing his job adequately, (3) that he was discharged, and (4) that he was replaced by a younger person. Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir. 2005).

The defendants initially argue that plaintiff cannot establish a prima facie case because Barry was replaced by someone also in the protected class who was 63 years old. Relying upon Greene v. Safeway Stores, Inc., 98 F.3d 554, 558

(10th Cir. 1996), plaintiff suggests that failure to show replacement by a younger person is no longer fatal to a prima facie case.

In Greene, the Tenth Circuit reversed the defendant's judgment as a matter of law, notwithstanding the plaintiff's replacement by an older worker. 98 F.3d at 558-60. The court, in reaching its opinion, discussed the Supreme Court's decision in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). In O'Connor, the Supreme Court had modified the last element of a prima facie case to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person. O'Connor, 517 U.S. at 311-13. The Tenth Circuit in Greene specifically declined to reach "the issue whether [the Tenth] Circuit allows a plaintiff in an 'extraordinary' situation to present a prima facie case through the McDonnell Douglas burden shifting approach even though the plaintiff fails to satisfy one or more of the prongs." Id. at 560. Rather, the court held that the plaintiff there "presented a submissible case of discrimination based on direct and circumstantial evidence without relying on the McDonnell Douglas test." Id.

Some courts have adopted the construction urged by the plaintiff, allowing a plaintiff to meet the requirements of the

6

Case 5:03-cv-04191-RDR   Document 81   Filed 11/17/05   Page 7 of 18

fourth element by showing other evidence that gives rise to an inference of discrimination rather than replacement by someone younger.  See, e.g., McCarthy v. New York City Tech. College, 202 F.3d 161 (2nd Cir. 2000) (replacement by older person not necessarily fatal to prima facie case where plaintiff could show other evidence of discrimination); Wright v. Southland Corp., 187 F.3d 1287, 1305 (11th Cir. 1999) (replacement by older person does not rule out possibility of age discrimination; may satisfy the fourth element with other evidence).

After Greene, the Tenth Circuit decided Munoz v. St. Mary-Corwin Hospital, 221 F.3d 1160 (10th Cir. 2000).  In Munoz, the court applied O'Connor and held that "because plaintiff's replacement was only two years his junior--an obviously insignificant difference--the necessary inference of discrimination was precluded, and he failed to establish his prima facie case."  The Court thus granted summary judgment to the defendant based upon plaintiff's failure to establish a prima facie case.  The court does not find that Barry can avoid the application of Munoz here, particularly where he was replaced by someone who was nine years older.

Even if the Tenth Circuit had embraced the position advocated by the plaintiff and adopted by some circuit courts concerning the fourth element, we are not persuaded that Barry

7

has shown an inference of age discrimination through other evidence. The only evidence he offers to support an inference of discrimination is the suggestion that he was terminated after he mentioned possible retirement. The courts finds this argument very puzzling. The suggestion that an employee's discussion of possible retirement and a subsequent termination does not appear to provide any support for a contention of age discrimination. In fact, in many age discrimination cases, the employee asserts discrimination based upon the contention that the employer suggested retirement. <u>See</u>, <u>e.g.</u>, <u>Kaniff v. Allstate Insurance Co.</u>, 121 F.3d 258, 263 (7th Cir. 1997); <u>Cox v. Dubuque Bank & Trust Co.</u>, 163 F.3d 492, 497 (8th Cir. 1998). The basis for this argument is obviously that the employer intends to get rid of this employee through the retirement process so that a younger individual can be employed. The argument made by Barry does not tend to show any age discrimination by the defendants. Discharging an employee who is close to retirement, without more, does not violate the ADEA. <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 611-12 (1993) (retirement and age are correlated but they are analytically distinct). Rather, it would seem that if the defendants were intent upon getting rid of Barry because of his age and replacing him with a younger person, then his retirement would have allowed them to carry out

8

their scheme.  Barry has failed to explain why his retirement would be detrimental to the defendants.  Moreover, he has failed to show why termination after comments of retirement would show an intent to discriminate based upon age.  See, e.g., Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992) (employers have a legitimate interest in determining when their executives intend to retire and "it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct").  In sum, the court fails to find that this contention provides any basis for an inference of age discrimination.

The court is confident that Barry has failed to demonstrate a prima facie case of age discrimination.  Accordingly, the defendants are entitled to summary judgment on this claim.

**SEX DISCRIMINATION**

All of the plaintiffs bring sex discrimination claims, and these claims are even more enigmatic than Barry's age discrimination claim.  Plaintiffs claim they were fired because they were related to each other.  Initially, plaintiffs appeared to assert a discrimination claim based upon familial status.  However, plaintiffs now appear to raise this claim as one for sex discrimination based upon the defendants' anti-nepotism policy.  This is how this claim is stated in their brief: "Termination of these plaintiffs because of their status as

9

husband, wife and daughter violated Title VII, prohibitions against discrimination based on sex, under well-established case law inconsistent application of a rule against nepotism in the workplace violates Title VII when nepotism policy is inconsistently applied."  Plaintiffs believe that evidence of gender discrimination comes from the testimony of a board member who said that the reason for the termination of Patricia and Jessica was that Barry would exert undue influence over them after Barry was terminated.

Sex discrimination claims are analyzed in the same manner as age discrimination claims.  See Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (noting that the three-step analytical framework established in McDonnell Douglas applies to both disparate treatment claims under Title VII and the ADEA).  Here, plaintiffs point to no direct evidence of sex discrimination, relying instead on the McDonnell Douglas framework of presenting indirect evidence of discrimination.

"In the context of summary judgment, the McDonnell Douglas framework requires a plaintiff to raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations."  Rakity v. Dillon Cos., 302 F.3d 1152, 1164 (10th Cir. 2002) (quotation marks omitted).

10

For the purposes of the instant motion, the court shall initially assume that Barry and Patricia have satisfied the prima facie case.  The court notes that such a decision is somewhat peculiar, given that this is a sex discrimination claim and the two plaintiffs represent both genders.  Nevertheless, the court believes that it can proceed to the issue of pretext and grant summary judgment to the defendants.  Moreover, the court believes that the defendants are entitled to summary judgment on Jessica's sex discrimination claim for this reason as well as at least one other.

Given the plaintiffs' argument that the application of the nepotism policy by the defendants constitutes unlawful sex discrimination, the court can readily conclude that the defendants have articulated a legitimate, nondiscriminatory reason for the termination of Barry and Patricia. Plaintiffs, however, contend that these decisions were pretextual for sex discrimination.  They contend that others were allowed to work for the defendants even though they violated the anti-nepotism policy.

In the employee handbook, the anti-nepotism policy is stated as follows:

Employment of Relatives

We have no general prohibition against hiring relatives.  However, a few restrictions have been

> established to help prevent problems of safety, security, supervision and morale.
>
> We will accept and consider applications for employment from relatives of current employees. Parents, grandparents, children, spouses, brothers, sisters, or in-laws will, generally, not be hired or transferred into positions where they directly supervise or are supervised by another close family member. Further, such relatives generally will not be placed in positions where they work with or have access to sensitive information regarding a close family member, or if there is an actual or apparent conflict of interest.

In order to prevail on this claim, plaintiffs must show that the anti-nepotism policy was used to promote sex discrimination. The fact that the policy was applied arbitrarily or improperly does not establish a sex discrimination claim. Rather, plaintiffs must show that the defendants used the policy to engage in gender discrimination.

Plaintiffs point to two examples of nepotism at MCDS that they believe support their position. One instance involved a lower level male employee who supervised his part-time employee son, and another involved a female employee who supervised her daughter. Plaintiffs assert that no action was taken concerning either of these situations.

After a careful review of the evidence, the court does not find plaintiffs have produced sufficient evidence that defendants have discriminated based upon gender through the use of their anti-nepotism policy. Plaintiffs have not shown that

12

the reason offered by the defendants is pretextual for illegal discrimination. The evidence in the record about the application of the anti-nepotism policy shows that on two occasions the defendants allowed employees, one set of males and one set of females, to allegedly violate the policy. The failure to properly carry out the policy under these circumstances, however, does not demonstrate a pretext for gender discrimination. See Roche v. Town of Wareham, 24 F.Supp.2d 146, 151-52 (D.Mass. 1998) (plaintiff failed to establish that town's anti-nepotism policy was pretext for discrimination where statistical analysis failed to show that policy disproportionately affected female applicants).

The only evidence offered of "gender discrimination" is the statement made by the board member that the reason for the termination of Patricia and Jessica was that Barry would exert undue influence over them after Barry was terminated. Plaintiffs interpret this comment to constitute sex discrimination because they believe it reflects the board member's belief that males are stronger than or dominant over females. Of course, another interpretation of this comment, and certainly a reasonable one, is that the board member was concerned that a terminated employee might be disgruntled and might seek to influence his relatives that still work with the

defendants. But, assuming, as the court must at summary judgment, this comment somehow relates to sex discrimination, we are certainly not persuaded that this statement constitutes sufficient evidence of sex discrimination. This single isolated comment is not enough to connote sex discrimination. Isolated or ambiguous comments are generally too abstract to support an inference of discrimination. Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir. 2000). Moreover, an employee's subjective understanding of a comment cannot alone support an inference of sex animus. See Debs v. Northeastern Illinois University, 153 F.3d 390, 397 (7th Cir. 1998).

Finally, concerning Jessica's claim of sex discrimination, the court believes that the defendants are entitled to summary judgment for another reason as well. The defendants have indicated that Jessica was terminated because her job was eliminated. Jessica has failed to produce any evidence to controvert that contention. She has only suggested that some of her duties were performed by others. She suggests that the Tenth Circuit's recent decision in Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005) eliminates the argument offered by the defendants.

Generally, to establish a prima facie case of gender discrimination in termination of employment, a plaintiff must

14

establish that (1) she belonged to a protected group, (2) she was doing satisfactory work, (3) defendant terminated her from employment, and (4) the position from which plaintiff was discharged was filled by a male or remained available. See <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 797 (10th Cir. 2000). The test is flexible, however, and plaintiff may establish a prima facie case with evidence that the termination occurred under circumstances that give rise to an inference of discrimination. <u>Id</u>.

The defendants contend that Jessica has not produced evidence that it filled her position or that the position remained open. Rather, they contend that the evidence is uncontroverted that her position was eliminated. Plaintiff has only suggested that some of her duties were assumed by at least two other employees.

The test whether a position was eliminated is not whether the responsibilities are still being performed, but whether they still constitute a single, distinct position. See <u>Furr v. Seagate</u>, 82 F.3d 980, 988 (10th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1056 (1997). With the application of this test, the court must find that Jessica has not shown that the defendants replaced her. Nevertheless, as stated previously, plaintiff can show a prima facie case by evidence that the termination

15

occurred under circumstances that give rise to an inference of discrimination.  See Amro, 232 F.3d at 797.

The court, however, is not persuaded that Jessica has demonstrated any evidence that leads to an inference of gender discrimination.  Moreover, the court does not believe that Plotke commands a different result.  In Plotke, the plaintiff was fired and told the reason for her termination was unsatisfactory job performance.  The district court ultimately granted summary judgment to the defendant because the plaintiff had not satisfied the fourth element of the prima facie case, i.e, that her job remained after her discharge.  The Tenth Circuit concluded that under these circumstances plaintiff's failure to show that the job remained after termination was not fatal to her case.  405 F.3d at 1100.  The court noted that the fourth element of the prima facie case is a "flexible one that can be satisfied differently in varying scenarios."  Id.  The court stated:

> Requiring Dr. Plotke to present evidence that her position remained open subsequent to her discharge when her employer never even asserted she was terminated because her position was eliminated is especially problematic.  Indeed, where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant.

Id.

16

Here, there has been no suggestion that Jessica was terminated due to unsatisfactory job performance. Rather, the defendants have maintained that Jessica was terminated based upon the anti-nepotism policy and the elimination of her position. As noted earlier in this opinion, the court has found no evidence of a gender discrimination in the application of the anti-nepotism policy. We also note the lack of evidence in the record of any other gender discrimination by the defendants. Without any evidence of circumstances which give rise to an inference of unlawful discrimination, the court must grant summary judgment to the defendants on this claim as well.

**OTHER CLAIMS**

With the grant of summary judgment to the defendants on the federal claims, the court shall dismiss the state law claims without prejudice without any further discussion. 28 U.S.C. § 1367(c)(3).

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. # 65) be hereby granted in part. Judgment shall be granted to the defendants and against the plaintiffs on plaintiffs' federal law claims of age discrimination and sex discrimination.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims are hereby dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2005 at Topeka, Kansas.

                                            s/Richard D. Rogers
                                            United States District Judge